RIVKIN RADLER LLP
ATTORNEYS AT LAW

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

JOANNE ENGELDRUM
PARTNER

September 17, 2026

**VIA CM/ECF and Email**
Hon. John P. Cronan, U.S.D.J.
CronanNYSDChambers@nysd.uscourts.gov

Re: *The Charter Oak Fire Ins. Co. v. Starr Indem. & Liab. Co., et al.*
Civ. Action No.: 26-cv-1559-JPC

Dear Judge Cronan:

We represent The Charter Oak Fire Insurance Company ("Charter Oak") in the above-referenced action. We write jointly with Starr Indemnity & Liability Company ("Starr"), pursuant to the May 14, 2026 Case Management Plan ("CMP"), to provide the Court with a status report. In accordance with the CMP, the parties completed discovery by September 10, 2026 and counsel have agreed to meet on September 18, 2026 to discuss settlement. Counsel respectfully request the Court's permission to meet via Zoom rather than in person due to Starr's counsel's familial commitments. The parties do not believe that referral to the Magistrate Judge and/or to the Court's mediation program would assist settlement discussions at this time.

**Charter Oak's Position**

For the reasons set forth in Charter Oak's August 17, 2026 letter (Docket # 19) and below, Charter Oak plans on filing a motion for summary judgment seeking a declaration Starr has a duty to defend and to indemnify Non-Party J.W. Mays, Inc. (Travelers' named insured), in an underlying bodily injury action filed by Freddy Fredericks ("Claimant"), as an additional insured under a Starr liability policy issued to Marvarino's Inc. d/b/a Cookie's Kids ("Marvarino's"), and to reimburse Charter Oak for past defense costs.

In the underlying action, Claimant seeks damages for injuries he allegedly sustained when he tripped and fell on the sidewalk of premises owned by JW Mays and leased to Marvarino's ("Premises"). JW Mays leases the Premises to Marvarino's for use as a retail store pursuant to a written lease. Marvarino's is required under its lease to procure additional insured coverage for JW Mays with limits of at least $5 million each occurrence. As required, Marvarino's procured the Starr policy which covers JW Mays as an additional insured for "liability arising out of the ownership, maintenance ***or*** use" of the Premises leased to Marvarino's (emphasis added).

In the underlying action, Claimant alleges liability against JW Mays for its alleged negligence as the owner of the leased Premises and alleged violation of various codes, rules, and ordinances, including NYC Administrative Code 7-210 which imposes a duty on premises owners to maintain the sidewalk abutting their premises. In the context of an alleged sidewalk fall, as here, New York appellate courts consistently find that the tenant's insurer (here, Starr) must defend and indemnify the owner/lessor (here, JW Mays) because the owner/lessor's liability, if any, arises out of its ownership of the leased premises – regardless of whether the sidewalk is part of the leased premises or the

owner/lessor is responsible for sidewalk repairs. *See Frank v. Continental Cas. Co.*, 123 A.D.3d 878, 880 (2d Dep't 2014) (finding tenant's insurer has a duty to defend and to indemnify landlord, explaining that because owners of commercial property are liable under the NYC Administrative Code for conditions on sidewalks, the landlord's "potential liability arises from their ownership of the leased premises"); *L&B Estates, LLC v. Allstate Ins.*, 71 A.D.3d 834 (2d Dep't 2010) (same); *Tower Ins. Co. of N.Y. v. Leading Ins, Group Ins. Co, Ltd.*, 134 A.D.3d 510 (1st Dep't 2015) (same); *Isidore Margel Trust Mitzi Zank Tr. V. Mt. Hawley Ins. Co.*, 195 A.D.3d 799 (2d Dep't 2021) (same); *Donato Realty, LLC v. Utica First Ins. Co.,* 146 A.D.3d 481, 482 (1st Dep't 2017). *See also Technology Ins. Co. v. Philadelphia Indem. Ins. Co.*, 642 F. Supp. 3d 445, 464-65 (S.D.N.Y. 2022) (finding additional insured coverage for landlord under tenant's policy because landlord's liability arose out of use and ownership of leased premises where injured claimant fell on sidewalk cellar doors that are part of the landlord's sidewalk obligations under NYC Administrative Code).

Because the Starr policy covers JW Mays for liability "arising out of" the ownership of the leased premises – which is not fault-based – the outcome of the liability issues and any dispositive motion practice in the underlying action is inconsequential to the coverage issues here. Moreover, Starr cannot satisfy its burden that the "structural alterations" exclusion in the Starr policy precludes coverage because the exclusion only applies to ongoing alterations and there is no evidence or allegation that Claimant's alleged accident was caused by ongoing structural alterations performed by JW Mays during the policy period of the Starr policy — or at any time.

**Starr's Position**

For the reasons set forth in Starr's August 20, 2026 letter (Docket # 20) and below, to the extent necessary, Starr will oppose Charter Oak's motion on the grounds that Starr has neither a duty to indemnify nor defend an owner when the liability in question does not arise from that part of the premises leased to an insured.

Mays entered into the subject lease with Marvarino's for use as a retail store. The Lease recitals define "The Premises" as the "first, second, and third floors and basement." There is no mention of the sidewalk or any portions of the outside of the building. The lease includes the following with regard to Repair And Maintenance:, "SECTION 7.01. As of the Commencement Date of the Lease, Lessor shall maintain and repair all of the structural portions and the exterior areas of the Building and Property. Lessee shall be responsible for all non-structural maintenance and repairs relating to the Leased Premises." The most recent amendment to the lease further provides: "Lessor shall keep, maintain, repair and replace, in good first-class repair and condition, at Lessor's sole cost and expense (i) all structural components (both interior and exterior) of the Building and the Premises . . . (iii) all Common Areas, including the removal of snow and ice therefrom and maintenance of access thereto . . ."

There additionally is no allegation that the Claimant was a customer of Marvarino's or was seeking to enter or exit the Premises at the time of his alleged accident.

When considering whether the additional insured's liability arises out of the "ownership, maintenance or use of that part of the premises leased to" the insured, New York courts recognize

that part of its analysis includes determining the extent of the premises leased to the insured and to do so, it is necessary to examine the underlying lease agreement. *See New Hampshire Ins. Co. v. Zurich Ins. Co.*, 798 N.Y.S.2d 346 (Sup. Ct., Nassau County 2004) (plaintiffs do not fall within the scope of Zurich's additional insured endorsement because there was no evidence in the lease that the tenant had any responsibilities regarding the exterior beyond the removal of ice, snow, dirt, or rubbish from the sidewalk or curb). In the present case, as the Lease does not include any obligation for Marvarino's to repair or maintain the sidewalk, the liability did not arise from Marvarino's use of the premises. *See Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co.*, 56 N.Y.S.3d 207 (2d Dep't 2017) (policy granted owner additional insured coverage, but only for "liability arising out of the ownership, maintenance or use of that part of the premises leased to [the store]," and Appellate Division determined that the owner was not entitled to either defense or indemnity, because the store had "leased only a portion of the building from [the owners], not the parking lot where the accident occurred, and it had no duty to maintain the parking lot."). The Starr Policy also specifically excludes liability arising from "structural alterations." New York courts have ruled that sidewalk repairs involving the replacement of concrete flags or addressing significant underlying defects, as is potentially the case in the underlying action, are structural in nature. *See Diop v. Getty Sq. Realty LLC* 199 A.D.3d 410 (1st Dep't 2021)

Most importantly, after oral argument on September 15, 2026, by oral decision the court in the underlying action granted Marvarino's motion for summary judgment in its entirety, dismissing all claims by the Claimant and cross-claims by Mays. The court directed counsel to promptly submit a proposed order (and any objections and proposed alternative order) to the court in light of the decision, and counsel is anticipated to imminently do so. Nevertheless, the underlying court effectively held as a matter of law that Marvarino's had no negligence or liability as it is not the owner of the premises, did not make prior repairs to the sidewalk that allegedly injured Plaintiff, did not cause or create the alleged dangerous condition, and was not required to repair or maintain the sidewalks pursuant to the terms of the lease. Thus, any potential liability did not, and cannot, arise from the ownership, maintenance or use of that part of the subject premises leased to Marvarino's as required for additional insured coverage under the Starr policy.

**Conclusion**

In light of the underlying summary judgment decision, counsel are conferring with their respective clients and discussing potential settlement. To the extent settlement discussion are not fruitful, the parties propose the following briefing schedule: Charter Oak to file/serve its moving papers on or before October 28, 2026; Starr to file/serve its opposition papers on or before November 25, 2026; Charter Oak to file/serve its reply papers on or before December 16, 2026.

Respectfully Submitted,

*/s/ Joanne M. Engeldrum*
RIVKIN RADLER LLP
*Attorneys for Plaintiff*

*/s/ Steven R. Shapiro*
KELLY & CURTIS, PLLC
*Attorneys for Defendant Starr*

cc: *No Appearance to Date: Marvarino's Inc.*

4914-1983-6625, v. 1

The parties' request to meet on Zoom is granted. By October 2, 2026, the parties shall update the Court on the status of their settlement discussions. The Court will set a summary judgment briefing schedule, if appropriate, after receiving that update.

SO ORDERED.
September 18, 2026
New York, New York

JOHN P. CRONAN
United States District Judge